UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MEDICAL SAVINGS INSURANCE COMPANY,

               Plaintiff,

vs.                        Case No.  2:04-cv-156-FtM-29DNF

HCA, INC., HCA HEALTH SERVICES OF
FLORIDA, INC., LEE MEMORIAL HEALTH
SYSTEM, CAPE MEMORIAL HOSPITAL,
MARTIN MEMORIAL HEALTH SYSTEMS,
INC., MARTIN MEMORIAL MEDICAL
CENTER, INC., FLORIDA HOSPITAL
ASSOCIATION, INC., and FLORIDA
HOSPITAL ASSOCIATION MANAGEMENT
CORPORATION,

               Defendants.

_____/

### OPINION AND ORDER

_____This matter comes before the Court on the following dispositive motions: (1) HCA defendants' Motion to Dismiss the Second Amended Complaint for Lack of Standing and for Failure to State a Claim (Doc. #108); (2) Martin Memorial's Motion to Dismiss Second Amended Complaint (Doc. #109); (3) Florida Hospital Association, Inc. and Florida Hospital Association Management Corporation's Motion to Dismiss Second Amended Complaint (Doc. #110); and (4) Defendants Lee Memorial Health System and Cape Memorial Hospital's Motion to Dismiss the Second Amended Complaint (Doc. #111).  Plaintiff Medical Savings Insurance Company filed Plaintiff's Consolidated Memorandum in Opposition to Defendants'

Motions to Dismiss Third Amended Complaint (Doc. #122).[1]  Plaintiff filed a Notice of Supplemental Authority (Doc. #125) on February 24, 2005.

In an Order (Doc. #87) dated October 25, 2004, the Court dismissed certain counts with prejudice and other counts without prejudice.  At plaintiff's request (Doc. #92), the Court allowed plaintiff to file another amended complaint to attempt to cure the deficiencies identified by the Court.  (Doc. #104).  Thus, for the reasons set forth in footnote one, the Third Amended Complaint (Doc. #119) is now the operative pleading.  The Court freely plagiarizes from its October 25, 2004, Order where appropriate.

**I.**

In deciding a motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff.  Christopher v. Harbury, 536 U.S. 4003, 406 (2002); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).  A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle it to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957)

---

[1]On January 4, 2005, plaintiff filed a motion for leave to file a third amended complaint omitting the claim under the Florida Deceptive and Unfair Trade Practices Act against all defendants. Plaintiff's other claims remain unaltered.  The Court, on January 31, 2005, granted leave to amend the Second Amended Complaint and applied the pending Motions to Dismiss (Doc. ##108-111) to the Third Amended Complaint, with the exception of the arguments directed to FDUTPA, which became moot.  (Doc. #117.)  Thus, the remaining arguments in the subject motions are applicable to the Third Amended Complaint (Doc. #119).

(footnote omitted); Marsh v. Butler County, Ala., 268 F.3d 1014, 1022 (11th Cir. 2001) (en banc).  Even this liberal standard has its limits, however.  Dura Pharms., Inc. v. Broudo, 125 S.Ct. 1627, 1634 (2005).  Additionally, dismissal is warranted under Fed. R. Civ. P. 12(b)(6) if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief.  Neitzke v. Williams, 490 U.S. 319, 326 (1989); Brown v. Crawford County, Ga., 960 F.2d 1002, 1009-10 (11th Cir. 1992).  The Court need not accept unsupported conclusions of law or of mixed law and fact in a complaint.  Marsh, 268 F.3d at 1036 n.16.

This standard applies when the Court reviews issues of standing pursuant to a motion to dismiss.  The principal purpose of standing is to ensure that the parties before the Court have a concrete interest in the outcome of the proceedings such that they can be expected to properly frame the issues.  Harris v. Evans, 20 F.3d 1118, 1121 (11th Cir. 1994)(en banc), cert. denied, 513 U.S. 1045 (1994).  Every complaint must contain sufficient allegations of standing, Church v. City of Huntsville, 30 F.3d 1332, 1336 (11th Cir. 1994), but the complaint may be dismissed for lack of standing only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Jackson v. Okaloosa County, Fla., 21 F.3d 1531, 1534 (11th Cir. 1994) (citation omitted).  Standing always remains an open issue, and can be revisited under a different standard at the summary

judgment stage or at trial.  <u>Church</u>, 30 F.3d at 1336; <u>Harris</u>, 20 F.3d at 1121 n.4.  This having been said, it is still plaintiff's responsibility to allege facts sufficient to establish its standing, and the Court cannot "speculate concerning the existence of standing, nor should we imagine or piece together an injury sufficient to give plaintiff standing when it has demonstrated none."  <u>Miccosukee Tribe of Indians of Fla. v. Florida State Athletic Comm'n</u>, 226 F.3d 1226, 1229-30 (11th Cir. 2000); <u>see also Shotz v. Cates</u>, 256 F.3d 1077, 1081 (11th Cir. 2001).

In order to establish standing, a plaintiff must adequately allege, and ultimately prove, three elements: (1) that it has suffered an "injury-in-fact;" (2) a causal connection between the asserted injury-in-fact and the challenged conduct of the defendant; and (3) that the injury likely will be redressed by a favorable decision.  <u>Shotz</u>, 256 F.3d at 1081, citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992).  These requirements are the "irreducible minimum" required by the Constitution for a plaintiff to proceed in federal court.  <u>Vermont Agency of Natural Res. v. United States</u>, 529 U.S. 765, 771 (2000); <u>Northeastern Fla. Chapter, Associated Gen. Contractors of Am. v. City of Jacksonville</u>, 508 U.S. 656, 664 (1993).

In addition, a plaintiff seeking injunctive relief lacks standing unless it alleges facts giving rise to an inference that it will suffer future injury by the defendant.  <u>Shotz</u>, 256 F.3d 1081.  "[A] party has standing to seek injunctive relief only if

-4-

the party alleges, and ultimately proves, a real and immediate – as opposed to a merely conjectural or hypothetical – threat of future injury." Church, 30 F.3d at 1337; see also Bowen v. First Family Fin. Servs., Inc., 233 F.3d 1331, 1340 (11th Cir. 2000).

## II.

The forty-six page Third Amended Complaint (Doc. #119) sets forth the following material facts, which at this stage of the proceedings are assumed to be true. Plaintiff Medical Savings Insurance Company (plaintiff or Medical Savings) is an insurance company authorized to do business as an acute care hospitalization insurer in, among other places, the State of Florida. Plaintiff's hospitalization insurance product requires a fairly significant level of self-insurance by the patients/insureds through Health Savings Accounts. Plaintiff's insurance policies provide coverage for "reasonable and customary" hospital charges, not the commonly referenced "usual and customary" charges. Pursuant to this policy provision, plaintiff will not pay what it considers to be unreasonable overcharges by health care providers. Medical Savings is also a provider in the health care financial services market, which it views as making it a competitor with defendants in the "related and inextricably intertwined" health insurance market. (Doc. #119, ¶21).

Medical Savings qualified for the acute care hospitalization insurance market in Florida in 1997, and began actively marketing its insurance product in early 2000. Medical Savings has

approximately 15,000 insureds in Florida.  Florida sales of its insurance policies rose generally at a substantial overall rate from April 2000 through December 2002.  By December 2003, however, the sales growth of its insurance product in Florida had significantly declined, and this decline continued through the filing of the Third Amended Complaint.  Plaintiff contends that this decline in sales growth and volume is attributable to certain unlawful actions (concerted refusal to deal or conspiracy to boycott, inflated prices, group boycott, deceptive practices, defamation, and wrongful business interference) by the defendants. Plaintiff describes the eight defendants as the principal Florida hospital "malfeasors," their principal acute care hospital "co-conspirators," and their trade association.

Defendant HCA, Inc. (HCA) is a for-profit hospital system with 41 acute care hospitals in Florida, and is a publicly traded company on the New York Stock Exchange.  Defendant HCA Health Services of Florida, Inc. (HCA Florida) is a for-profit hospital system with 3 or more acute care hospitals in Florida.[2]  HCA and HCA Florida are dominant or controlling members of defendant Florida Hospital Association, Inc.  HCA controls over 10,000 acute care hospital beds in Florida, and are dominant providers of acute care hospital beds in Florida.

_____

[2]Where appropriate, the Court will refer to defendants HCA, Inc. and HCA Health Services of Florida, Inc. collectively as HCA.

-6-

Defendant Lee Memorial Health System (LMHS) operates three acute care hospitals: Cape Memorial Hospital, Lee Memorial Hospital, and Lee Memorial Health System Health Park.  Lee Memorial Hospital and Lee Memorial System Health Park are registered fictitious names for LMHS.  Cape Memorial Hospital is owned by defendant Cape Memorial Hospital, Inc.[3]  Defendant LMHS is a member of defendant Florida Hospital Association, Inc., and controls over 900 acute care hospital beds in Florida.  In the past two years, the Lee Memorial defendants have initiated litigation against plaintiff and its insureds.

Defendants Martin Memorial Health Systems, Inc. and Martin Memorial Medical Center, Inc. are non-profit corporations that operate two acute care hospitals in Florida.[4]  The Martin defendants have a total of 336 acute care hospital beds in Florida. Defendant Martin Memorial Medical Center, Inc. has initiated litigation against some of plaintiffs' insureds.

Defendant Florida Hospital Association, Inc. (FHA) is a tax-exempt, non-profit entity composed, in part, of 47 hospital systems that operate 322 acute care hospitals in Florida.  Defendant Florida Hospital Association Management Corporation is a wholly

---

[3]Where appropriate, the Court will refer to defendants Lee Memorial Health System and Cape Memorial Hospital collectively as the Lee Memorial defendants.

[4]Where appropriate, the Court will refer to defendants Martin Memorial Health Systems, Inc. and Martin Memorial Medical Center, Inc. collectively as the Martin defendants.

owned subsidiary of defendant FHA.[5]  Defendant FHA, through its FHA Insurance Services, competes with plaintiff in the Florida market for acute care hospitalization insurance by writing, selling, or otherwise providing such insurance.  Defendant FHA has coordinated or attempted to coordinate legal action against plaintiff and has urged its members to avoid a dispute resolution program established by the Florida legislature.[6]

The eight-count Third Amended Complaint (Doc. #119) alleges the following causes of action: (1) violation of Section 1 of the Sherman Act (group boycott and/or concerted refusal to deal) as to six defendants; (2) violation of Section 1 of the Sherman Act (price-fixing conspiracy) as to all defendants; (3) violation of section 2 of the Sherman Act (monopolization) as to two defendants; (4) violation of Florida's Antitrust Act (price-fixing and group boycott and/or concerted refusal to deal) as to all defendants; (5) violation of Florida's Antitrust Act (monopolization) as to one defendant; (6) tortious interference with business relations under Florida law, apparently as to all defendants; (7) defamation under Florida law as to two defendants; and (8) injunctive relief pursuant to Section 16 of the Clayton Act as to all defendants.

---

[5]Where appropriate, the Court will refer to defendants Florida Hospital Association and Florida Hospital Association Management Corporation collectively as FHA.

[6]In addition to the named defendants, the Third Amended Complaint identifies some 23 "possible co-conspirators" to this action.  (Doc. #119, p. 25).

Count I alleges that six defendants (all except Lee Memorial Health System and Cape Memorial Hospital) entered into a contract, combination, or conspiracy to refuse to deal with and to boycott Medical Savings in order to maintain, enhance or further solidify their concerted efforts to stabilize inflated prices for acute care hospitalization services, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Plaintiff asserts this was either a *per se* violation of § 1, or a violation of the "rule of reason" standard. The unlawful behaviors by defendants are alleged to include: (1) rejecting payments tendered by Medical Savings for hospital goods and services; (2) refusing medical treatment to Medical Savings' insureds; (3) refusing to recognize Medical Savings' insurance when admitting patients; (4) requiring Medical Savings' insureds to pay in advance before treatment is rendered; (5) coordinating sham litigation against Medical Savings and/or its insureds solely to deter challenges to defendants' inflated prices; (6) coercing insureds/patients into suing Medical Savings; and (7) making false statements to current and prospective insureds that Medical Savings refuses to pay and/or has not paid reasonable hospital charges. Plaintiff further alleges that the purpose of the boycott and refusal to deal with Medical Savings is to (1) punish Medical Savings for challenging inflated hospital prices, and (2) force Medical Savings out of the Florida health insurance market. Plaintiff alleges that defendants' behavior has resulted in antitrust injuries to competition in the acute care hospitalization

services market and the healthcare insurance market, with the following specific antitrust injuries to Medical Savings: (1) lost customers; (2) lost sales; (3) lost revenue; (4) lost profits; (5) lost goodwill; (6) lost business opportunities in the healthcare insurance market; and (7) litigation expenses resulting from a pattern of "sham" proceedings initiated solely to further defendants' anti-competitive scheme. Plaintiff alleges that these injuries are distinct from injuries suffered by its insureds.

Count II alleges that all defendants entered into one or more agreement(s) to set prices in the acute care hospitalization services market at artificially elevated levels which bore no relation to the true prices that would prevail in a competitive marketplace, in violation of § 1 of the Sherman Act. Plaintiff asserts this was either a *per se* violation of § 1, or a violation of the "rule of reason." The unlawful behaviors by defendants are alleged to include: (1) knowingly sending inflated invoices to Medical Services and demanding full payment; (2) rejecting payments for the reasonable value for goods and services rendered; and (3) initiating efforts to collect on the inflated amounts. The efforts to collect on the artificially inflated invoices are alleged to have caused the same seven antitrust injuries to Medical Savings as described in Count I.

Count III alleges that HCA and LMHS conspired and attempted to monopolize the acute care health services market in Lee County, Florida. Defendants are alleged to have charged "supra-competitive

-10-

prices" to Medical Savings and to patients, and to have engaged in anticompetitive conduct, including the deliberate misrepresentation and/or concealment of material facts and information concerning the true economic cost of acute care from patients and their insurers. Plaintiff asserts that while HCA does not compete in the health insurance services market, its monopolistic behavior in the acute care hospitalization services market has direct and substantial impact on insurers like Medical Savings by raising prices which insurers are obligated to pay.  Plaintiff asserts that HCA's attempts to collect the excessive overcharges have caused and continue to cause injury to Medical Savings, even though it is not responsible to pay for the artificially inflated prices.  This injury is the hindrance of Medical Savings' ability to renew and sell Hospital Savings Accounts to current and prospective insureds. The use of the monopoly power to inflate invoices and enforce payment is alleged to have caused the same seven antitrust injuries to Medical Savings as described in Count I and Count II.

Count V alleges violation of Florida's Antitrust Act by all defendants through a contract, combination or conspiracy in constraint of Medical Savings' trade and in constraint of competitive commerce in the acute health care hospitalization market place.  Plaintiff adopts the prior allegations set forth in Counts I through Count III.

Count VI alleges violation of Florida's Antitrust Act by defendant HCA based on its monopolistic conduct targeting trade or

commerce in the acute health care hospitalization marketplace in Florida.   Plaintiff adopts the prior allegations set fourth in Counts III and Count V.

Count VII alleges tortious interference with business relations, apparently by all defendants.  Plaintiff asserts that it had valid contractual relationships with its insureds, that defendants intentionally interfered with its insureds and induced breach or termination of the existing and prospective business relationships, and that Medical Savings lost current and prospective business relationships and incurred significant litigation expenses.  The interference consisted of: (1) refusing to provide medical treatment to Medical Savings' insureds; (2) refusing to recognize Medical Savings' insurance when admitting its insureds; (3) requiring Medical Savings' insureds to provide down payments as condition precedent to treatment; (4) instituting sham litigation against Medical Savings' insureds for purposes of coercing them to aid and abet defendants' illicit practices; (5) misleading Medical Savings' insureds by telling them that Medical Savings does not pay reasonable charges for hospital goods and services; and (6) defaming Medical Savings to its insureds by telling patients and the public that Medical Savings does not honor its contractual obligation to pay reasonable amounts for hospital goods and services.

Count VIII alleges that LMHS and MMMC used defamatory language concerning Medical Savings to current and prospective insureds

which was false and which adversely affected Medical Savings'
reputation in the health insurance market.   More specifically,
plaintiff alleges that LMHS sent a letter to an insured stating
"You need to be aware that Medical Savings Health Plan is engaged
in a practice, state-wide, of discounting hospital bills and
claiming that the charges are not 'reasonable.'   Unfortunately,
Medical Savings Health Plan does not appear to have any factual
basis for its assertions in this regard.   This policy of Medical
Savings seems to be based on the desire to maximize its profits by
under-paying hospitals, rather than on any real survey of the
marketplace."   Plaintiff alleges that MMMC sent a letter to an
insured stating "I would like to explain why we do not accept your
insurance plan.   The Florida Department of Insurance has
recommended that hospitals not accept the plan.... Your insurance
company ... arbitrarily pays whatever it deems appropriate."
Plaintiff alleges that these false statements were made with malice
to further the conspiracy to protect defendants' inflated pricing
scheme, and resulted in actual lost sales, lost profits, lost
customers, lost business opportunities, and lost goodwill.

In Count IX, plaintiff re-alleges all its prior statements and
claims entitlement to injunctive relief under Section 16 of the
Clayton Act and Florida law.

### III.

Defendants assert that dismissal of claims in the Third
Amended Complaint is warranted on the following grounds: (1)

plaintiff lacks antitrust standing and antitrust injury, (2) plaintiff fails to make any specific allegations of a conspiracy, and (3) plaintiff fails to plead essential elements under Florida law for its state common law claims.

### A.  Antitrust Standing

Defendants contend that plaintiff's antitrust claims (Counts I, II, III, V, VI, and IX) must be dismissed because there is an absence of facts supporting plaintiff's antitrust standing.[7] Because plaintiff cannot show antitrust standing, the Court will dismiss the antitrust counts.

The question of standing to sue under the Sherman Act is one of law. Todorov v. DCH Healthcare Auth., 921 F.2d 1438, 1448 (11th Cir. 1991); Austin v. Blue Cross and Blue Shield of Ala., 903 F.2d 1385, 1387 (11th Cir. 1990)).  In order to determine whether a plaintiff has standing to bring an antitrust action, a court must review the allegations contained in the complaint. Austin, 903 F.2d at 1387.  More than constitutional standing must exist; "the court must find a close relationship between the plaintiff's injury and the alleged antitrust violation." Id., quoting Amey, Inc. v. Gulf Abstract & Title, Inc., 758 F.2d 1486, 1493 (11th Cir. 1985)

---

[7]The Florida Antitrust Act, FLA. STAT. § 542.15 et seq., was patterned after the Sherman Act, and was intended to complement and follow the federal court interpretations of the Sherman Act.  FLA. STAT. § 542.32; Auton v. Dade City, Fla., 783 F.2d 1009, 1010 n.1 (11th Cir. 1986).  Accordingly, the Court's rulings on Counts I, II, and III, based on the Sherman Act, will apply as well to Counts V and VI, which assert parallel charges under the Florida Antitrust Act.

(internal quotes omitted); see also Florida Seed Co., Inc. v. Monsanto Co., 105 F.3d 1372, 1374 (11th Cir. 1997) ("Antitrust standing requires more than the injury in fact and the case or controversy required by Article III of the Constitution.") (internal quotes and citation omitted).

The Eleventh Circuit uses a two-prong approach in deciding whether a plaintiff has antitrust standing. Florida Seed Co., Inc., 105 F.3d at 1374, citing Municipal Utils. Bd. of Alberville v. Alabama Power Co., 934 F.2d 1493, 1499 (11th Cir. 1991). First, the plaintiff must establish that it has suffered "antitrust injury." Municipal Utils. Bd. of Alberville, 934 F.2d at 1499. "As the Supreme Court has made clear, to have standing antitrust plaintiffs 'must prove more than injury causally linked to an illegal presence in the market [i.e., but for causation]. Plaintiffs must prove antitrust injury, which is to say injury of the type that the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful.'" Florida Seed, 105 F.3f at 1374, quoting Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977). "[A]ntitrust injuries include only those injuries that result from interference with the freedom to compete." Johnson v. University Health Servs., Inc., 116 F.3d 1334, 1338 (11th Cir. 1998).

"Second, the plaintiff must establish that it is an efficient enforcer of the antitrust laws." Florida Seed, 105 F.3d at 1374, citing Municipal Utils. Bd. of Alberville, 934 F.2d at 1499. This

determination is predicated on the "target area test," which "requires that an antitrust plaintiff both 'prove that he is within that sector of the economy endangered by a breakdown of competitive conditions in a particular industry' and that he is 'the target against which anticompetitive activity is directed.'" Florida Seed, 105 F.3d at 1374, quoting National Indep. Theatre Exhibitors, Inc. v. Buena Vista Distribution Co., 748 F.2d 602, 608 (11th Cir. 1984). "Basically, a plaintiff must show that it is a customer or competitor in the relevant antitrust market." Florida Seed, 105 F.3d at 1374, citing Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters, 459 U.S. 519, 539 (1983).

Despite its new allegations, the Third Amended Complaint fails to allege antitrust standing. The core allegations are that Medical Savings has a hospitalization insurance policy that it offers to consumers; this hospitalization insurance policy is a contractual agreement between Medical Savings and its insureds; pursuant to this contract, Medical Savings agrees to pay those hospital charges which Medical Savings finds to be "reasonable and customary," and only those charges; Medical Savings does not pay those portions of hospital charges it determines are not "reasonable and customary;" Medical Savings has no contractual relationships with the defendants, and defendants have not agreed to accept the payments which Medical Savings finds to be "reasonable and customary" as full satisfaction for its services; and Medical Savings' insureds are responsible to the defendant

-16-

hospitals for payment of those portions of the hospital bills not paid by Medical Services.

With respect to the first prong, plaintiff has not alleged an antitrust injury to itself. There is no allegation which would indicate an interference with the freedom to compete in the health care insurance business.[8] Quite the contrary, plaintiff markets a health insurance product that consumers are free to purchase if, as with any insurance product, they deem the coverage worth the premium. While lost sales and profits have been recognized as antitrust injuries in the Third Circuit, that court found those losses to be cognizable injuries when they were linked with actual payments of alleged overcharges. See Pennsylvania Dental Ass'n v. Medical Serv. Ass'n of Pa., 815 F.2d 270 (3d Cir. 1987). That is not the case here. Plaintiff made no payments of overcharges, but only partial payments which plaintiff, at its discretion, determined to be reasonable. Plaintiff has cited no binding case authority in which the alleged injuries were sufficient for antitrust standing without the actual payment of the alleged overcharges.

Additionally, plaintiff clearly falls short of the second prong. Plaintiff contends that it has antitrust standing under a direct purchaser theory, that is, that plaintiff also "purchases"

_____

[8]While plaintiff asserts it is a provider in the health care financial services market, there are no allegations at all about its activities in this market or support for its assertion that this makes it a competitor of defendants.

the medical services through its insureds.  The Court concludes that plaintiff is neither a customer nor a competitor of these defendants.  Unlike <u>Pennsylvania Dental Ass'n</u>, plaintiff does not utilize a pre-paid insurance plan whereby the medical services have already been purchased.  Plaintiff cannot base its injuries on an occurrence – payment of the alleged overcharge – that has not happened and which under its contractual obligations will never happen.  Moreover, plaintiff does not fall within the target area of the alleged misconduct.  As discussed in a prior Order, the targets are the patients, not an insurer such as plaintiff.

Moreover, the patients, as direct purchasers, would be the efficient enforcer.[9]  <u>Illinois Brick Co. v. Illinois</u>, 431 U.S. 720, 735 (1977) ("antitrust laws will be more effectively enforced by concentrating the full recovery for the overcharge in the direct purchasers rather than by allowing every plaintiff potentially affected by the overcharge to sue only for the amount it could show was absorbed by it.")

---

[9]Plaintiff urges the Court to find that plaintiff has standing to pursue injunctive relief because the law does not require an efficient enforcer under section 16.  (Doc. #122, pp. 29-30.)  The Court disagrees.  Standing for injunctive relief under the antitrust laws requires that the plaintiff allege "threatened injury that would constitute antitrust injury if inflicted upon the plaintiff and the defendant's causal responsibility for such threatened injury."  <u>Todorov</u>, 921 F.2d at 1452.  Having found that plaintiff does not suffer from antitrust injury, the Court concludes that plaintiff does not have standing to seek injunctive relief.

Plaintiff's complaints, in essence, stem from a lack of market demand for its particular insurance product in the absence of an agreement by defendants to accept plaintiff as the arbiter of reasonable service fees.   Nothing in the antitrust law compels defendants to acquiesce to such a role by an insurer.   The Third Amended Complaint does not allege that plaintiff has suffered an antitrust injury[10], and therefore the antitrust related claims will be dismissed.

**B.   State Common Law Claims**

**(1)   Tortious Interference of Business Relations**

Plaintiff alleges that, as a result of defendants' conduct, plaintiff's "ability to sell insurance to prospective insureds and renew policies for current insureds has been hindered...."   (Doc. #119, pp. 26-27.)   Defendants contend that plaintiff fails to state a claim under Count VII (tortious interference with business relations) because (1) there are no allegations that plaintiff's current insureds breached any contract with plaintiff, and (2) plaintiff's allegation of defendants' interference with its prospective insureds is insufficient because plaintiff fails to allege identifiable customers and renewals are not protected.

Under Florida law, the elements of tortious interference with a business relationship are: (1) the existence of a business

---

[10]Because of the Court's conclusion that plaintiff lacks antitrust standing to pursue its antitrust claims, the Court will not consider defendants' remaining arguments regarding the alleged pleading deficiencies of plaintiff's antitrust claims.

relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff. International Sales & Serv., Inc. v. Austral Insulated Prods., Inc., 262 F.3d 1152, 1154 (11th Cir. 2001), citing Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994); see also Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 742 So. 2d 381, 385-86 (Fla. 4th DCA 1999), citing Tamiami Trail Tours, Inc. v. Cotton, 463 So. 2d 1126, 1127 (Fla. 1985).

As the Florida Supreme Court said in Ethan Allen Inc., an action for tortious interference with a business relationship generally requires "a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." 647 So. 2d 812, 815. The Court added in Ferguson Transp. Inc. v. North Am. Van Lines, that a claim of tortious interference with a business relationship requires proof that the plaintiff had a business relationship with "identifiable customers." 687 So. 2d 821, 821 (Fla. 1996). The cause of action cannot be established by proof that the defendant interfered with a relationship between the plaintiff and the public at large. Sarkis v. Pafford Oil Co, Inc., 697 So. 2d 524, 526-27 (Fla. 1st DCA 1997).

The Court agrees with defendants' positions.  The Third Amended Complaint does not allege that existing insureds were induced to breach their contracts with plaintiff or that any breach occurred.  A non-renewal of an insurance policy does not constitute an induced breach, since plaintiff does not allege any agreement with its existing insureds that they would renew their policies at the end of the current term.  The mere hope that some of its past insureds may choose to renew their policy cannot be the basis for a tortious interference claim under Florida law.  Therefore, plaintiff fails to state a claim, with respect to its current insureds, for tortious interference with business relations.

With respect to prospective customers, the Third Amended Complaint does not identify "a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered."  Ethan Allen, Inc., 647 So.2d at 815.  No cause of action exists for tortious interference with a business's relationship to the community at large.  Id.  Thus, plaintiff fails to state a claim under Count VII.

**(2)   Defamation**

Defendants Lee Memorial Health System and Martin Memorial Medical Center contend that the subject statements are pure opinion, and thus plaintiff's defamation count fails to state a claim.  Plaintiff challenges the veracity of the subject

statements, and thus insists then that a jury should resolve the issue of whether the statements are false.

Under Florida law, to state a cause of action for defamation, a plaintiff must allege that (1) the defendant published a false statement (2) about the plaintiff (3) to a third party and (4) that the falsity of the statement caused injury to the plaintiff. Valencia v. Citbank Int'l, 728 So. 2d 330, 330 (Fla. 3d DCA 1999). Florida courts also recognize a distinction between a pure expression of opinion, which is not actionable, and a mixed expression of opinion. Sullivan v. Barrett, 510 So. 2d 982, 983-84 (Fla. 4th DCA 1987); see also From v. Tallahassee Democrat, Inc., 400 So. 2d 52, 56 (Fla. 1st DCA 1981). Pure opinion occurs when a defendant makes a comment or opinion based on facts which are set forth in the article or which are otherwise known or available to the reader or listener as a member of the public. Hoch v. Rissman, Weisberg, Barrett, 742 So. 2d 451, 459 (Fla. 5th DCA 1999), citing Miami Child's World, Inc. v. Sunbeam Television Corp., 669 So. 2d 336 (Fla. 3d DCA 1996). Mixed expression of opinion occurs when an opinion or comment is made which is based upon facts regarding the plaintiff or his conduct that have not been stated in the article or assumed to exist by the parties to the communication. Hoch, 742 So. 2d at 459-60.

Whether a statement is one of pure or mixed opinion is an issue of law. Id. at 460. In determining whether the statement is one of pure or mixed opinion, the court must examine the statement

in its totality and the context in which it was uttered or published. Id. The court must consider all of the words used, not merely a particular phrase or sentence. Id. In addition, the court must give weight to cautionary terms used by the person publishing the statement and consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published. Id.

The Court agrees with defendants. While defendants published these statements to third parties – plaintiff's insureds – the Court finds the statements constitute opinions and are therefore not actionable. Defendants' statements are based on plaintiff's refusal to render full payment of the amount due. Plaintiff concedes that it makes only partial payments, and admits that the payment amount is based upon what plaintiff deems as reasonable for the particular service. Viewing the statements in the context in which they were published, the Court concludes that the subject remarks are opinions. Because opinions cannot be the basis for a defamation claim, plaintiff fails to state a claim for defamation against defendants. Thus, the defamation claim is due to be dismissed.

Plaintiff's request for leave to file yet another amended complaint is denied. Plaintiff has been afforded several opportunities to allege viable claims, and failed to do so.

Moreover, plaintiff has not provided any basis for the Court to grant leave to amend the Third Amended Complaint.

Accordingly, it is hereby

**ORDERED**:

1.   HCA defendants' Motion to Dismiss the [Third] Amended Complaint for Lack of Standing and for Failure to State a Claim (Doc. #108) is **GRANTED**;

2.   Martin Memorial's Motion to Dismiss [Third] Amended Complaint (Doc. #109) is **GRANTED**;

3.   Florida Hospital Association, Inc. and Florida Hospital Association Management Corporation's Motion to Dismiss [Third] Amended Complaint (Doc. #110) is **GRANTED**;

4.   Defendants Lee Memorial Health System and Cape Memorial Hospital's Motion to Dismiss the [Third] Amended Complaint (Doc. #111) is **GRANTED**;

5.   Plaintiff's request for leave to amend the Third Amended Complaint is **DENIED**; and

6.   The Clerk shall enter judgment in favor of defendants and against plaintiff.  The Clerk shall terminate any pending motions or deadlines, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this ___24th___ day of June, 2005.

_____
JOHN E. STEELE
United States District Judge

Copies:
Hon. Douglas N. Frazier
Counsel of record
DCCD